1
2
3
4
5

Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

6   [Additional counsel appearing on signature page]

7   *Attorneys for Plaintiff* and the Class

8

9   **UNITED STATES DISTRICT COURT**

10   **NORTHERN DISTRICT OF CALIFORNIA**

11
12
13
14
15
16
17

TIMOTHY GLICK, individually and on
behalf of all others similarly situated,

Plaintiff,

v.

PERFORMANT FINANCIAL
CORPORATION, a Delaware corporation

Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

18

19   **CLASS ACTION COMPLAINT**

20   1.   Plaintiff Timothy Glick ("Glick" or "Plaintiff") brings this Class Action Complaint

21   against Defendant Performant Financial Corporation ("Performant Financial" or "Defendant") to

22   stop its practice of placing calls using an "automatic telephone dialing system" ("ATDS") to the

23   cellular telephones of consumers nationwide without their prior express consent and to obtain

24   redress for all persons injured by its conduct. Plaintiff Glick for his Class Action Complaint

25   alleges as follows upon personal knowledge as to himself and his own acts and experiences, and,

26   as to all other matters, upon information and belief, including investigation conducted by his

1   attorneys.

2        2.      The Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA" or the "Act")

3   was enacted to protect consumers from unauthorized calls like those alleged in this Complaint –

4   autodialed calls placed to cellphone numbers without each consumer's prior express written

5   consent.

6        3.      Defendant's violations of the Act have caused Plaintiff and the members of the

7   classes (defined below) to experience actual harm, including the aggravation, nuisance, and

8   invasion of privacy that necessarily accompanies the receipt of autodialed calls, in addition to the

9   loss of functionality, diminution in available data and battery life, and the ability to use and enjoy

10  their cellphones.

11       4.      In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit,

12  seeking (1) an injunction requiring Defendant to cease placing autodialed calls to cellular

13  telephones without the express consent of the recipients, and (2) an award of statutory damages to

14  the members of the putative classes under the TCPA to be paid into a common fund for the

15  benefit of the Class Members, together with costs and reasonable attorneys' fees.

16                                  **PARTIES**

17       5.      Plaintiff Glick is a natural person and domiciled in the State of Ohio.

18       6.      Defendant Performant Financial Corporation is a corporation incorporated and

19  existing under the laws of the State of Delaware whose primary corporate headquarters is located

20  at 333 North Canyons Parkway, Livermore, California 94551. Performant Financial does business

21  throughout the United States, including in the State of California and this District.

22                             **JURISDICTION & VENUE**

23       7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

24  §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227, a

25  federal statute.

26       8.      The Court has personal jurisdiction over Defendant and venue is proper in this

27  _____

28                          CLASS ACTION COMPLAINT
                                    -2-

1     District because Defendant is registered to do business in the State of California, regularly

2     conducts business in the State of California and in this district, its principal place of business is

3     located in this District, and a substantial part of the events giving rise to the claims asserted here

4     occurred in or emanated from this District.

5                       **COMMON ALLEGATIONS OF FACT**

6          9.      The Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. and its

7     implementing regulations, 47 C.F.R. §64.1200, *et seq*. prohibit companies, such as Performant

8     Financial, from placing calls using an automatic telephone dialing system ("ATDS") and/or using

9     an artificial or prerecorded voice ("prerecorded calls") when making calls to cellular telephones

10    without first obtaining consent. Performant Financial has violated, and continues to violate, the

11    TCPA and its implementing regulations by placing autodialed calls to cellular telephone

12    subscribers (a) who had recycled (or reassigned) cellular telephone numbers who have not

13    expressly consented to receiving such calls and/or (b) who have expressly requested not to receive

14    such calls.

15         10.    Performant Financial purports to provide "technology-enabled recovery and

16    related analytics services." Simply stated, Performant is a debt collector, albeit one that repeatedly

17    touts its sophisticated technology as a differentiator from peer firms.[1]

18         11.    In its filings with the SEC, Performant Financial lists a number of state and federal

19    rules and regulations that it must comply with, such as The Health Insurance Portability and

20    Accountability Act of 1996 (HIPAA), the Fair Debt Collection Practices Act (FDCPA), and the

21    Fair Credit Reporting Act (FCRA).[2] Notably absent from that list is the TCPA.

22         12.    In many instances, Performant Financial's calls to consumer's cellular telephones

23

24    [1] "Our intellectual property is a significant component of our business, including, most notably,

25    the intellectual property underlying our proprietary technology-enabled services platform through

26    which we provide our defaulted asset recovery and other services." -
https://www.sec.gov/Archives/edgar/data/1550695/000155069516000050/a2015123110k.htm

27    [2] https://www.sec.gov/Archives/edgar/data/1550695/000155069516000050/a2015123110k.htm

28

violate the TCPA because: (1) the telephone owner did not consent to receiving the calls (i.e., the consent, if it was obtained at all, was obtained from the prior owner of that telephone number), and/or (2) the current cellular telephone owner has expressly requested not to receive such calls.

13.     Indeed, last year, the FCC explicitly ruled that:

> [T]he TCPA requires the consent not of the intended recipient of a call, but of the current subscriber (or non-subscriber customary user of the phone) and that caller best practices can facilitate detection of reassignments before calls. We generally agree with commenters who oppose granting these requests that there are solutions in the marketplace to better inform callers of reassigned wireless numbers; that businesses should institute new or better safeguards to avoid calling reassigned wireless numbers and facing TCPA liability; and that the TCPA requires consent from the actual party who receives a call.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, WC No. 07-135, FCC 15-72 (rel. July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order (the "July 2015 FCC Order".)

14.     While some Performant Financial customers may elect to receive autodialed calls, anyone in the U.S. can receive autodialed calls from Performant Financial on their cellular telephone even if they do not have any prior relationship with Performant Financial at all. Thus, as with Plaintiff, Performant Financial places autodialed calls to current subscribers of recycled cellular telephone numbers (many of whom do not even have a relationship with Performant Financial) who have never consented to receiving such autodialed and/or prerecorded calls.

15.     For various reasons, cellular telephone subscribers deactivate and relinquish their cellular telephone numbers. Once deactivated, the cellular telephone carrier reassigns the number to another subscriber – a practice known as "recycling." Recycling times (i.e., the time between deactivation and reassignment) vary across carriers, generally ranging from 30 days to six months depending on location and demand. During the recycling period, the cellular telephone number is considered disconnected.

16.     In some instances, the prior owner of a recycled telephone number may have consented to receiving autodialed calls from Performant Financial. But, even if the prior owner

consented, that consent does not transfer to the new recycled cellular telephone number's owner. Ultimately, new owners of recycled cellular telephone numbers are given no choice in receiving, addressing, and in paying for Performant Financial's autodialed calls.

17.     The mobile marketing industry is aware of cellular telephone number recycling and, in particular, the risk associated with placing autodialed and/or prerecorded calls to non-consenting recycled numbers. To help mobile marketers navigate regulatory compliance, the Mobile Marketing Association ("MMA") publishes specific guidelines based on accepted industry practices for all mobile marketers. In its October 2012 U.S. Consumer Best Practices for Messaging, the MMA recommends that mobile marketers, such as Performant Financial, "have appropriate and effective systems and processes for managing deactivation and recycled number information. These systems and processes should be designed to ensure that mobile content programs subscribed to by previous holders of a specific phone number do not continue to be delivered or billed to a subsequent holder of that number when it is reassigned." The MMA further advises mobile marketers to "process deactivation information within three business days of receipt."[3]

18.     In response to the liability risk associated with recycled numbers, numerous commercially available services exist to help companies that call others using autodialers, such as Performant Financial, identify recycled numbers and non-consenting cellular subscribers. For instance, companies such as Infutor, Nextmark List, and Contact Center Compliance advertise their ability to instantly identify and flag disconnected telephone numbers from cellular telephone number data lists on a recurring basis (such as weekly or monthly). This type of service can identify disconnected numbers before they are recycled, thereby alerting mobile marketers that

---

[3] The MMA is a global trade organization that issues codes of conduct, best practices, guidelines, rules and instructions for companies engaged in mobile marketing. Its U.S. Consumer Best Practices for Messaging are based on accepted industry practices, common wireless carrier policies and regulatory guidance. With over 800 members, the MMA is the preeminent source for mobile marketing information and expertise.

any consent associated with those telephone numbers has been terminated.

19.     Despite the FCC's ruling, the industry guidelines, the commercial availability of programs that help callers filter out recycled numbers, and the obvious lack of consent associated with recycled numbers, Performant Financial fails to take the necessary steps to insure that its autodialed calls are placed only to consenting recipients.

20.     Rather, Performant Financial simply treats the new recycled cellular telephone number owner as if he or she were the previous owner. As such, if the previous owner gave consent to receive Performant Financial's autodialed calls, Performant Financial continues to treat that consent as the consent of the new (unassociated) owner. New owners are then forced to incur the cost and bother of receiving Performant Financial's autodialed calls. Notably, new owners are provided no explicit means to contact Performant Financial to make the autodialed calls stop. And, as evidenced by numerous complaints on internet message boards, Performant Financial often disregards consumers' "stop" requests entirely.

21.     The following sample of consumer complaints regarding autodialed and/or prerecorded calls evidences Performant Financial's practice of disregarding recycled numbers and placing autodialed calls to non-consenting cellular telephone owners:

- calls our house several times a day, who they're looking for doesn't even live here[4];

- Received a call from this number. Said they were looking for owner or accounts payable for payment. We are a new business just a week old so we have no debts. Sounds like a scam. They called themselves Performant now[5];

- I got a call from them trying to find out about a neighbor. I have a unlisted number and it's none of my business![6];

---

[4] http://www.whitepages.ca/phone/1-541-955-7800

[5] http://800notes.com/Phone.aspx/1-541-955-7800

[6] http://800notes.com/Phone.aspx/1-541-955-7800/11

- Performant Recovery Debt Collector. Just got a call about an ex-customer of ours. They want to get a hold of this company. I gave no insight, as it is a former customer.[7]

22.     Performant Financial knows or should know that its autodialed calls are placed to non-consenting, recycled cellular telephone number subscribers. Indeed, Performant Financial has received numerous consumer complaints alerting it to this very fact and requesting that the autodialed calls stop. Ultimately, Performant Financial is responsible for verifying cellular telephone number ownership and obtaining consent before placing autodialed calls to cellular telephone subscribers. Even with prior cellular subscriber consent, Performant Financial is liable under the TCPA for placing autodialed calls to cellular telephone numbers reassigned to new subscribers without the new subscriber's consent. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012) (under the TCPA, "[c]onsent to call a given number must come from its current subscriber," not its prior subscriber); *Breslow v. Wells Fargo*, 755 F. 3d 1265, 1267 (11th Cir. 2014) (consent from "called party" means consent from the person subscribing to the called number at the time the call was made, not the former subscriber); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, ¶ 123, 18 FCC Rcd. 14014, 2003 WL 21517853 (2003) ("we reject proposals to create a good faith exception for inadvertent autodialed or prerecorded calls to wireless numbers…")

23.     Given the multitude of readily available commercially feasible resources to identify such consumers, Performant Financial had ready means to identify those consumers and to obtain their prior express consent before placing autodialed calls to their cellphones.

**PERFORMANT ENGAGES IN SKIP-TRACING**

24.     Unfortunately, Performant Financial also routinely engages in skip-tracing[8], the process of calling persons other than a debtor in the process of collecting a debt. Many such

---

[7] *Id.*

[8] http://www.indeed.com/cmp/Performant/reviews, http://www.jobs-chicago.com/detail/6a5dca078b9e3ae1/recovery-associate-job-openings-performant-financial-corporation-san-angelo-june-2016.html

numbers end up being cellphone numbers.

25.     Performant Financial necessarily lacks express consent to call cellphone numbers that are wrong, reassigned, or independently discovered without customer knowledge or input. By autodialing such numbers, without consent, Performant Financial routinely violates the TCPA.

## PERFORMANT FINANCIAL'S UNAUTHORIZED AUTODIALED CALLS SENT TO STOP-REQUEST RECIPIENTS

26.     Performant Financial also places autodialed calls to cellular subscribers who have expressly "opted-out" or requested not to receive its autodialed and/or prerecorded calls. Notably, many of these cellular subscribers did not consent to receiving Performant Financial's autodialed calls in the first place. But, even with any hypothetical prior express consent, Performant Financial is required to honor each stop-request as a termination of any prior consent. Accordingly, any autodialed calls made to a cellular subscriber after receiving an express stop request is done without prior express consent.

27.     Performant Financial simply ignores statutory duties and accepted industry guidelines. Instead, Performant Financial makes it difficult for consumers to opt-out or stop receiving such autodialed calls.

28.     Despite receiving numerous express stop requests from cellular subscribers, including Plaintiff, Performant Financial continues to place autodialed calls to these subscribers, sometimes for months and years afterwards.

29.     Performant Financial knows, or consciously disregards the fact, that its autodialed calls to these cellular subscribers are unauthorized.

## PERFORMANT IS NOT EXCEPTED FROM THE CALLS DUE TO COLLECTING A DEBT OWED TO OR GUARANTEED BY THE UNITED STATES

30.     In *McPherson v Performant*, a prior TCPA class action filed in this District against Defendant (Case No: 3:16-cv-00520, complaint filed January 29, 2016), Performant argued that its calls were made to collect a debt owed to or guaranteed by the United States and that such types of calls have been excepted by the TCPA. This was an exception created by the *Bipartisan*

1   *Budget Act of 2015*, Pub. L. No. 114-74, 129 Stat. 584 ("Budget Act") in which Congress

2   amended section 227 of the Communications Act by adding subparagraph (b)(2)(H) to the TCPA.

3   With that amendment, Congress then granted the FCC authority to "restrict or limit the number

4   and duration of calls made to a telephone number assigned to a cellular telephone service to

5   collect a debt owed to or guaranteed by the United States."[9]

6       31.     In *McPherson,* Performant claimed that it acts, in accordance with The Higher

7   Education Act of 1965, 20 U.S.C. §1071, *et seq.* ("HEA"), as an accounts receivable management

8   contractor that provides default prevention services on behalf of the United State Department of

9   Education through a subcontracting arrangement with Federal Loan Servicing ("FLS"), a Title IV

10  Additional Services ("TIVAS") Contractor and a subsidiary of the Pennsylvania Higher

11  Education Assistance Authority ("PHEAA"). Performant further claimed that the Department of

12  Education has specifically authorized certain guaranty agencies who contract with TIVAS

13  contractors to use subcontractors, such as Performant, to perform default prevention collection

14  activities required as part of managing student loans. As such, in *McPherson,* Performant alleged

15  that it provides default prevention services on federally-funded student loans.

16      32.     However, the TCPA's exception for calls "made solely to collect a debt owed to or

17  guaranteed by the United States," (47 U.S.C. §227(b)(1)(A)(iii)) does not apply to the claims of

18  the classes.

19      33.     First, Section 301 directed the Commission to "prescribe regulations to implement

20  the amendments made by this section."[10] On August 2, 2016 the Commission exercised its

21  authority and adopted regulations that limit both the number and duration of the calls covered by

22  subparagraph (b)(2)(H) of the TCPA.

23      34.     Per the FCC, the exception for loans guaranteed by the United States only applies

24  so long as "the telephone call is made by the owner of the debt, or its contractor." In the FCC's

25  _____

26  [9] Budget Act, §301(a)(2)(C) (adding 47 U.S.C. §227(b)(2)(H)).

27  [10] Budget Act, §301(b).

CLASS ACTION COMPLAINT

-9-

28

Report and Order[11], the FCC considered questions posed by two commentators which had asked that subcontractors be similarly permitted to call. The FCC *"declined to adopt rules that are as broad as 'subcontractor,' but limit[ed] permitted callers to the owner of the debt or its contractor."* In the *McPherson* litigation, Dave Lubets, a Vice President of Performant Technology, Inc. declared under oath that Performant:

> is an accounts receivables management contractor that provides default prevention services on behalf of the United States Department of Education through a *subcontracting* arrangement with Federal Loan Servicing ("FLS"), a Title IV Additional Services ("TIVAS") Contractor.[12]

Performant has therefore admitted that it is a subcontractor of FLS, and thus it cannot avail itself of any exception for the calls made to the Autodialed No Consent Class, as defined *infra*.

35.    The calls to the Plaintiff and the No Consent Autodialed Class are calls made by Performant to individuals who do not owe a debt owed or guaranteed by the Federal government but who were called for some other reason such that Performant called them as either part of their skiptracing process or there was a subsequent reassignment of their phone number. The new rules only except a "telephone call [] made to the debtor." The August 2016 FCC Order states, when explaining who may be called, that:

> *Who may be called? We next turn to the question of who may be called using the exception created by the Budget Act. We determine that, because calls made pursuant to the exception must be made "solely to collect a debt," the covered calls may only be made to the debtor or another person or entity legally responsible for paying the debt. Calls are not permitted to other persons listed on the debt paperwork, such as references or witnesses, under our rules. These persons are not liable for the debt; consequently, calls to these persons cannot be "solely to collect" the debt.* [13]

---

[11] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC Report and Order, FCC 16-99 (rel. August 11, 2016), available at https://www.fcc.gov/ecfs/filing/08111407302175/document/08111407302175e1e4 (the "August 2016 FCC Order".)

[12] Decl. of Dave Lubets, No. 3:16-cv-00520 (N.D. Cal.) June 30, 2016, ECF Dkt 24-1 at paragraph 3.

[13] August 2016 FCC Order at 10.

The Autodialed No Consent Class consists of cellular telephone users who are not the holders of the alleged debt owed to the government. Defendant Performant thus had no exception from the TCPA to call the members of the Autodialed No Consent Class.

36.      The calls made by Defendant Performant also exceeded the maximum number of telephone calls allowed. In the August 2016 FCC Order, the FCC ruled that "The maximum number of telephone calls that may be made to a debtor is: (A) three telephone calls within a thirty-day period."[14] As indicated below, Plaintiff alleges that he received daily phone calls from Defendant Performant for 2-3 weeks at a time. As such, even if the exception for calls placed to collect debts guaranteed by the U.S. government would apply to Defendant Performant, its exception did not apply to anyone who, like Plaintiff, received more than three calls in any 30-day period.

37.      Several of the calls made by Defendant Performant were made after Plaintiff and the putative Autodialed Stop Class, as defined *infra*, requested that the calls "stop." This is prohibited. The FCC narrowed the exception such that "zero telephone calls [are allowed] following a request by the debtor for no further telephone calls." The FCC further ruled that:

> *(4) A debtor may request to the owner of the debt or its contractor that no further telephone calls be made to the debtor for the life of the debt by any reasonable method, including orally and by reply text message. No autodialed, prerecorded-voice, or artificial-voice federal debt collection calls are permitted after the stop-call request.[15]*

Here, Plaintiff alleges that he has repeatedly informed Defendant Performant that Defendant has called the wrong number and has repeatedly requested that Defendant stop calling him. Thus, even if Defendant Performant had an exception to make calls, the exception would not apply to an Autodialed Stop Call Class.

**FACTS SPECIFIC TO PLAINTIFF TIMOTHY GLICK**

---

[14] August 2016 FCC Order at 31.

[15] *Id.*

38.     In May 2012, Plaintiff Glick acquired a new cellular telephone and phone number. Soon after Plaintiff got his new cellular number, Defendant Performant Financial called him repeatedly from 541-955-7800 on his cellular telephone asking for Michele Brookes.

39.     Plaintiff has responded to the calls explaining over and over that they have the wrong number, asking for the calls to stop.

40.     Whenever Plaintiff would pick up the calls, he would always hear a delayed pause on the line before an operator would come onto the line, a hallmark sign of Defendant using an autodialer.

41.     Plaintiff would receive daily calls from Defendant for 2-3 weeks at a time at which point he would repeatedly tell them to stop calling. The calls would subside for a few months, and then pick up again daily for weeks at a time.

42.     Since his opt-out requests were not honored, Plaintiff Glick began to call Performant Financial back at the phone number they were calling him 541-955-7800 and speak to a live operator and ask them to stop calling him further. Plaintiff did this for approximately 13 months beginning in June 2015 and was repeatedly assured the calls would stop, except that that they did not stop.

43.     Plaintiff Glick never consented either orally or in writing to receive autodialed calls placed to his cellular telephone from Defendant, Performant Financial.

44.     Plaintiff Glick believes he has received more than 100 autodialed calls from Performant Financial after he first requested that the autodialed calls stop.

45.     At no time did Plaintiff Glick consent to the receipt of autodialed calls to his cellular telephone from Performant Financial, let alone providing prior oral or written express consent to Performant Financial for such calls to be placed.

46.     By making unauthorized autodialed telephone calls as alleged herein, Performant Financial has caused consumers actual harm. In the present case, a consumer could be subjected to many unsolicited auto-dial calls as the Performant Financial's opt out mechanism simply does

not work.

47.     In order to redress these injuries, Plaintiff, on behalf of himself and the Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited autodialed calls to cellular telephones.

48.     On behalf of the Classes, Plaintiff seeks an injunction requiring Performant Financial to cease all unsolicited and unauthorized autodialed calling activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Classes:

> **Autodialed No Consent Class:** All persons in the United States who (1) from four years prior to the filing of this complaint to the present (2) Defendant (or a third person acting on behalf of Defendant) placed an autodialed call to; (3) the person's cellular telephone number; and (4) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

> **Autodialed Stop Call Class**: All persons in the United States who (1) from four years prior to the filing of this complaint to the present (2) Defendant (or a third person acting on behalf of Defendant) placed an autodialed call to (3) the person's cellular telephone number (4) after the person informed Defendant that s/he no longer wished to receive calls from Defendant.

50.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or

1   released. Plaintiff anticipates the need to amend the class definition following appropriate

2   discovery.

3         51.    On information and belief, there are hundreds, if not thousands, of members of the

4   Classes such that joinder of all members is impracticable.

5         52.    There are several questions of law and fact common to the claims of Plaintiff and

6   the other members of the Classes, and those questions predominate over any questions that may

7   affect individual members of the Classes. Common questions for the Class members that may be

8   answered in a single stroke include but are not limited to the following:

9         a.   whether Defendant's conduct constitutes a violation of the TCPA;

10        b.   whether Defendant utilized an automatic telephone dialing system to place

11             autodialed calls to members of the Classes;

12        c.   whether members of the Classes are entitled to treble damages based on the

13             willfulness of Defendant's conduct;

14        d.   whether Defendant obtained prior express written consent to contact any class

15             members;

16        e.   whether Performant Financial's autodialed calls constitute telemarketing or were

17             dual purpose messages, and

18        f.   to the extent Defendant's conduct does not constitute telemarketing, whether

19             Defendant obtained prior express oral consent to contact any class members.

20        53.    The factual and legal bases of Defendant's liability to Plaintiff and to the other

21   members of the Classes are the same, resulting in injury to the Plaintiff and to all of the other

22   members of the Classes, including the annoyance and aggravation associated with such autodialed

23   calls as well as the loss of cellular plan minutes and temporary inability to enjoy and use their

24   cellphones, as a result of the transmission of the autodialed calls alleged herein. Plaintiff and the

25   other members of the Classes have all suffered harm and damages as a result of Defendant's

26   unlawful and wrongful conduct of transmitting autodialed calls. Plaintiff's claims are typical of

27

28

the claims of the members of the Classes as all members of the Classes are similarly affected by Defendant's wrongful conduct. Plaintiff, like other members of the Classes, received unsolicited autodialed calls from Defendant. Plaintiff is advancing the same claims and legal theory on behalf of himself and all absent members of the Classes.

54.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Classes. Plaintiff has no interest antagonistic to the interests of the other members of the proposed Classes and is subject to no unique defenses. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Classes.

55.     The suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted, and/or has refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief. Specifically, injunctive relief is necessary and appropriate to require Defendant to discontinue placing unsolicited and unauthorized autodialed calls to the public. Likewise, Defendant has acted and fails to act on grounds generally applicable to the Plaintiff and the other members of the Classes in placing the autodialed calls at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

56.     In addition, this suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the

1   litigants, and promotes consistency and efficiency of adjudication. The claims asserted herein are

2   applicable to all consumers throughout the United States who received an unsolicited and

3   unauthorized autodialed call from Defendant. The injury suffered by each individual class

4   member is relatively small in comparison to the burden and expense of individual prosecution of

5   the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually

6   impossible for members of the Classes individually to redress effectively the wrongs done to

7   them. Even if the members of the Classes could afford such litigation, the court system could not.

8   Individualized litigation presents a potential for inconsistent or contradictory judgments.

9   Individualized litigation increases the delay and expense to all parties, and to the court system,

10  presented by the complex legal and factual issues of the case. By contrast, the class action device

11  presents far fewer management difficulties, and provides the benefits of single adjudication,

12  economy of scale, and comprehensive supervision by a single court.

13          57.     Adequate notice can be given to the members of the Classes directly using

14  information maintained in Defendant's records or through notice by publication.

15                          **FIRST CAUSE OF ACTION**
                        **Telephone Consumer Protection Act**
16                          **(Violation of 47 U.S.C. § 227)**
            **(On Behalf of Plaintiff Glick and the Autodialed No Consent Class)**
17

18          58.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth

19  herein.

20          59.     Defendant made unsolicited and unauthorized autodialed calls to cellular telephone

21  numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class—

22  without their prior express consent.

23          60.     Further, Defendant made the telephone calls using equipment that had the capacity

24  to store or produce telephone numbers to be called using a random or sequential number

25  generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

26  Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the

27

28

Autodialed No Consent Class simultaneously and without human intervention. The telephone dialing equipment utilized by Defendant, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendant's ATDS disseminated information *en masse* to Plaintiff and other members of the Autodialed No Consent Class.

61.     By placing unsolicited and unauthorized autodialed calls to Plaintiff and the cellular telephones of members of the Autodialed No Consent Class without their prior express consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

62.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

63.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Glick and the Autodialed Stop Call Class)**

64.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

65.     Defendant and/or their agent placed unsolicited and unauthorized autodialed calls to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed Stop Call Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human

1 | intervention.

2 |      66.     The telephone dialing equipment utilized by Defendant and/or their agent, which is

3 | substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a

4 | database of telephone numbers, in an automatic and systematic manner.

5 |      67.     These unsolicited and unauthorized autodialed calls were made *en masse* and

6 | without the consent of the Plaintiff and the other members of the Autodialed Stop Call Class to

7 | receive such autodialed calls. Indeed, to the extent that consent had ever existed, it had been

8 | explicitly revoked by Plaintiff and the other members of the Autodialed Stop Call Class since they

9 | each had informed Defendant that they no longer wished to receive autodialed calls.

10 |      68.     Plaintiff and members of the Autodialed Stop Call Class expressly requested that

11 | Defendant no longer place autodialed calls to them, after which Defendant failed to place Plaintiff

12 | and members of the Autodialed Stop Call Class on Defendant's internal do-not-call list (or failed

13 | to do so within a reasonable time period).

14 |      69.     The autodialed calls made to Plaintiff and the Autodialed Stop Call Class were

15 | made after any consent had been expressly revoked by responding with an opt-out request.

16 |      70.     Based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

17 |      71.     More than thirty days following Plaintiff's and the members of the Autodialed

18 | Stop Call Class' express requests to not receive autodialed calls from Defendant, Defendant

19 | placed additional autodialed calls to them without their consent and in contradiction of their

20 | requests not to be called.

21 |      72.     Defendant violated  47 C.F.R. § 64.1200 (d) by initiating calls for telemarketing

22 | purposes to residential and cellular telephone subscribers, such as Plaintiff and the Autodialed

23 | Stop Call Class, without instituting procedures that comply with the regulatory minimum

24 | standards for maintaining a list of persons who request not to receive telemarketing calls from

25 | them

26 |      73.     As a result of such conduct, Plaintiff and the other members of the Autodialed Stop

27 |

28 |

CLASS ACTION COMPLAINT

-18-

Call Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

74.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed Stop Call Class.

WHEREFORE, Plaintiff Timothy Glick, individually and on behalf of the Classes, prays for the following relief:

A.      An order certifying the Classes as defined above, appointing Plaintiff Timothy Glick as the representative of the Classes, and appointing his counsel as Class Counsel;

B.      An award of actual and statutory damages to be paid into a common fund for the benefit of the Class Members;

C.      An order declaring that Defendant's actions, as set out above, violate the TCPA;

D.      A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

E.      An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

F.      An order requiring Defendant to identify any third-party involved in the autodialed calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

G.      An injunction requiring Defendant to cease all unsolicited autodialed calling activities, and otherwise protecting the interests of the Classes;

H.      An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

I.      An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

J.      An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA;

K.      An award of reasonable attorneys' fees and costs; and

L.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: September 23, 2016                      TIMOTHY GLICK, individually, and on behalf of
                                                all others similarly situated,

1

                            By:   /s/  Richard T. Drury
                            One of Plaintiff's Attorneys

2

Richard T. Drury (SBN 163559)
richard@lozeaudrury.com

3

Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com

4

LOZEAU DRURY LLP
410 12th Street, Suite 250

5

Oakland, CA 94607
Telephone: (510) 836-4200

6

Facsimile: (510) 836-4205

7

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*

8

Patrick H. Peluso
(ppeluso@woodrowpeluso.com)*

9

Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite

10

300

11

Denver, Colorado 80210
Telephone: (720) 213-0675

12

Facsimile: (303) 927-0809

13

Stefan Coleman
(Law@stefancoleman.com)*

14

Law Offices of Stefan Coleman, P.A.
201 S Biscayne Blvd., 28th Floor

15

Miami, FL 33131
Telephone: (877) 333-9427

16

Facsimile: (888) 498-8946

17

*Counsel for Plaintiff and the Putative
Class*

18

19

*pro hac vice* admission to be filed

20

21

22

23

24

25

26

27

28