Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff* TIMOTHY GLICK
and the Class

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TIMOTHY GLICK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PERFORMANT FINANCIAL CORPORATION, a Delaware corporation<br><br>Defendant. | Case No. 3:16-cv-05461-JST<br><br>**OPPOSITION TO DEFENDANT PERFORMANT'S MOTION TO STAY** |

## I. INTRODUCTION

Plaintiff Glick brings this alleged class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA") challenging unsolicited phone calls made by or on behalf of Defendant Performant. The calls continued after Glick asked for them to stop, and Plaintiff alleges they were made using an automatic telephone dialing system ("ATDS").

Rather than argue that Glick can't certify a class or that he can't plausibly prove an element of his claim, Performant requests a stay of the entire case pending the D.C. Circuit's consideration of *ACA Int'l v. Fed. Comm. Comm'n* ("ACA Appeal").[1] According to Performant, the Ninth Circuit itself has suspended its consideration of a matter—*Marks v. Crunch San Diego, LLC*—pending the D.C. Circuit's decision in the ACA Appeal, and this Court would supposedly be wise to follow suit (and apparently wait for both the D.C. Circuit and the Ninth Circuit to issue rulings). And Performant is not alone. That is—and as this Court is well aware—in seeking a stay based on the ACA Appeal Performant joins a growing list of TCPA class action defendants who have requested stays from this Court (and innumerable other courts) in the hopes that the D.C. Circuit will overturn or scale back the 2015 TCPA Order.

Failing that, Performant argues that the case should be stayed pending the outcome of a petition for reconsideration filed with the FCC on December 16, 2016 by Great Lakes Higher Education Corp. (Mot. at 7.) The Great Lakes petition requests that the FCC reconsider the decisions reached in its 2015 TCPA Order. Performant claims that even if the ACA Appeal doesn't go its way, the FCC may reconsider its prior decisions at some point in the future.

Fortunately for consumers across the country who continue to be bombarded by spam cellphone calls, Performant and the other litigants presently seeking stays have failed to provide

---

[1] The ACA Appeal is reviewing the Federal Communications Commission's ("FCC") July 10, 2015 Order (the "2015 TCPA Order") specifically the 2015 TCPA Order's holdings: (a) as to the definition of an automatic telephone dialing system ("ATDS"), (b) the TCPA's exemption for calls "made with the prior express consent of the called party", and (c) whether a safe harbor exemption for calling the wrong person is limited only to the first such call.

a sufficient legal or factual basis for freezing all TCPA litigation while the D.C. Circuit considers *ACA*. Just the opposite is true: the instant record makes plain that there is no basis for staying Glick's case, and there likely isn't much of a basis for staying any of the other cases either.

First, no matter how the ACA Appeal is decided it will not be dispositive of Glick's claims. The ACA Appeal doesn't address all of the claims Glick has raised, including his discarded attempts to stop the calls. And more importantly, it is doubtful that either the plaintiff or defense bar will accept the D.C. Circuit decision as final (appeals to the full D.C. Circuit or the United States Supreme Court are both possible). It should be recalled that droves of TCPA defendants requested stays prior to the issuance of the very 2015 TCPA Order now being considered by the D.C. Circuit, promising courts at the time that they need only await a decision from the FCC on the then-pending petitions, the results of which would surely spell the end of uncertainty with respect to the meaning of consent, the definition of an ATDS, and other TCPA issues being considered. Indeed, Performant's own arguments make this patently clear when it asserts that the Great Lakes FCC petition for reconsideration provides an alternative basis for imposing a stay—it's always something. There will always be another brief, motion, petition, or appeal to serve as a basis for delaying consumers' ability to access critical evidence.

Second, the duration of the requested stay is indefinite. No one knows when a decision may be issued (any are speculative). A stay could delay fact gathering for months or longer.[2]

Third, stalling the litigation for months on end will prejudice Glick's and other plaintiffs' abilities to gather evidence and testimony necessary to prove their claims. Unlike the Ninth Circuit case *Marks*, which was appealed following summary judgment in Crunch San Diego's favor, no discovery has occurred yet in this case, and it is unclear what steps, if any, Performant has taken to preserve relevant information that could be lost due to delay. On the other hand, it seems readily apparently that Performant suffers no prejudice at all should a stay be denied. If a favorable decision is issued, it can promptly be brought before the Court for appropriate action.

[2] Briefing in the ACA Appeal was completed in February 2016 and oral argument was held eight months later on October 19, 2016.

As explained below, the Court should deny Defendant's Motion, and allow this case and other cases like it to proceed. Stays in these cases only hurt consumers and help telemarketers.

## II. STATEMENT OF FACTS

Defendant Performant, a corporation headquartered in Livermore, California, provides technology-enabled recovery and related analytics services. (Compl. ¶¶ 6, 10). Defendant is a debt collector that utilizes an automated telephone dialing system ("ATDS") as part of its collection efforts. (Compl. ¶¶ 9-10.) In doing so, Defendant places calls to many cellular telephone numbers, which have been "recycled," a process in which a consumer relinquishes their telephone number, which is later reassigned to a new consumer. (Compl. ¶¶ 14-15.) Despite a litany of industry guidelines and commercially available resources—which Defendant could utilize to avoid calling these "recycled" numbers—Defendant refuses to take any corrective action. (Compl. ¶ 17.) Instead, Defendant treats the new owner of the telephone numbers as if he were the previous owner, relying upon the prior owner's consent to be called and ignoring the new owner's "stop" requests. (Compl. ¶ 20.) Despite prior case law and the FCC issuing regulations specifically clarifying these "recycled" calls to be in violation of the TCPA, Defendant continues to make such calls. (Compl. ¶ 22.)

Performant also engages in the practice of skip tracing, which consists of calling numbers that are not associated with a debtor in an effort to locate that debtor. (Compl. ¶ 24.) Thus, Defendant lacks the necessary prior express consent to call numbers, which are independently discovered without the customer's knowledge or input. (Compl. ¶ 25.) Furthermore, Defendant refuses to honor "stop" requests it receives from customers. (Compl. ¶ 26.)

In Plaintiff Glick's case, he acquired a new cellular telephone number and began receiving calls from Defendant asking to speak with Michele Brookes, a person Plaintiff does not know. (Compl. ¶ 38.) Plaintiff has repeatedly responded to these calls by explaining that Defendant had the wrong number, and asking it not to call him again. (Compl. ¶ 39.) Despite the "stop" requests, Defendant continued to call Plaintiff, consisting of daily calls for two to three weeks at a time and then subduing for a few months before beginning again. (Compl. ¶ 41.)

Eventually, following his repeated unsuccessful attempts to stop the calls, Plaintiff called Defendant at the number the phone calls were emanating from to request be taken off its call list. At that point Performant repeatedly assured him that he would no longer be called. Such commitments were not honored--Performant continued to call Glick for over thirteen months. (Compl. ¶ 42.) Overall, Plaintiff estimates that he has received over one hundred calls from Performant despite never consenting to be called in the first place. (Compl. ¶ 43.)

Based on these facts, and as explained below, the Court should deny the Motion to Stay.

## III. ARGUMENT

Performant cites several cases in which courts have granted stays pending the outcome of the ACA Appeal. (Def. Mot. 3-4.) Many courts, however, have denied such motions. *See, e.g.*, *Caudill v. Wells Fargo Home Mortg., Inc.*, 2016 U.S. Dist. LEXIS 89136, *9 (E.D. Ky. July 11, 2016) (holding "[i]n the absence of a clear benefit of awaiting a decision in ACA International, the defendant's desire for a stay is outweighed by Caudill's interest in resolving this case, as well as the public's interest in efficient judicial proceedings."); *Coniglio v. Iqual Corp.*, 2015 U.S. Dist. LEXIS 162334 (M.D. Fla. Dec. 3, 2015); *Jones v. Ad Astra Recovery Servs.*, 2016 U.S. Dist. LEXIS 73561, *15 (D. Kan. June 6, 2016); *Kafatos v. Uber Techs., Inc.*, 2016 U.S. Dist. LEXIS 2526 (N.D. Cal. Jan. 8, 2016); *Konopca v. Comcast Corp.*, 2016 U.S. Dist. LEXIS 55274 (D.N.J. Apr. 26, 2016); *Lathrop v. Uber Techs., Inc.*, 2016 U.S. Dist. LEXIS 2490 (N.D. Cal. Jan. 8, 2016); *Nussbaum v. Diversified Consultants, Inc.*, 2015 U.S. Dist. LEXIS 129750, *5 (D.N.J. Sept. 28, 2015). In the Ninth Circuit:

> [G]rant[ing] a motion to stay requires the district court to weigh the competing interests affected by either granting or denying the motion. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (Internal citations omitted). The court may "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Levya v. Certified Grocers of California, Ltd.*, 593 F.2d 863–64 (9th Cir. 1979)). "Among these competing interests are (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268.

*O'Hanlon v. 24 Hour Fitness USA, Inc.*, No. 15-CV-01821-BLF, 2016 WL 815357, at *3 (N.D. Cal. Mar. 2, 2016). The moving party "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936).

Seeking a stay here, Performant asserts that this case should be put on hold pending the outcome of the ACA Appeal, which may or may not impact the Ninth Circuit's eventually forthcoming opinion in *Marks*, which has now also been put on hold. Additionally, Defendant argues for a stay based on a petition for reconsideration recently filed with the FCC.

As explained below, the Court should deny Defendant's Motion to Stay. Neither the ACA Appeal, the Ninth Circuit's decision in *Marks*, nor the Great Lakes FCC petition is likely prove dispositive. Instead, a stay would be potentially indefinite and would serve no purpose but to prejudice Plaintiff's ability to gather necessary data and testimony to Performant's advantage.

### A. Any decision in *ACA* is unlikely to dispositive of Plaintiff's claims.

First, Performant is incorrect that the ACA Appeal would be dispositive. To hear Performant tell it, "per the Ninth Circuit's pronouncement in *Satterfield*, and the *Marks* decision, there is a body of case law that would support reversal of the [2015 TCPA Order]." (Def. Mot. 5.) Then, with the 2015 TCPA Order upended, Performant supposedly, without explanation, escapes liability. This argument falls apart.

First, while Performant is correct that the Ninth Circuit found the definition of the ATDS to be "clear and unambiguous," *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009), the court continued by explaining that:

> [w]hen evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.' Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only

have the capacity to do it.

*Id.* Thus, *Satterfield* is *consistent* with the 2015 Order, which also focused on the potential capacity of equipment to make calls without human intervention and refused to adopt a standard requiring actual present capacity. It does not serve as a basis for reversing the FCC's decision.

*Marks* is admittedly another story. *Marks* was decided following summary judgment with the Court finding that the equipment in that case lacked both the present as well as the potential capacity to make autodialed calls. While a decision on the appeal of that matter has been suspended pending the D.C. Circuit's decision, that presents no basis for staying the instant case. *Marks* was decided, and the appeal is being argued, on a complete factual record. No matter the decision from the D.C. Circuit, Glick will need discovery regarding the potential and present technological capabilities of Performant's dialing equipment. Indeed, the fact that Performant seeks a stay at all suggests that under the current FCC interpretation, as echoed by *Satterfield* and other cases,[3] it understands fully that its equipment meets the definition of ATDS under the statute. As such, regardless of the decision to hold off on deciding *Marks* until the ACA Appeal is resolved, a stay in this case would simply delay Glick's ability to receive information he needs to understand whether the equipment qualifies under either standard for an ATDS.

Additionally, the ACA Appeal will likely do nothing to address Glick's claims that he repeatedly requested not to be called. Stop requests are not at issue in the pending appeals. As a result, while the ACA Appeal could conceivably result in a decision that impacts the manner by which an ATDS is defined or consent is initially given, the appeal is unlikely to deal at all with a major issue in the case: whether Performant failed to honor requests not to be called.

---

[3] When presented with the issue of unutilized ATDS capacity, courts in the Ninth Circuit have repeatedly found that potential capacity is sufficient to find equipment constitutes an ATDS. *See In re Jiffy Lube Intern., Inc., Text Spam Litigation*, 847 F.Supp.2d 1253, 1261 (S.D. Cal. 2012) ("The Ninth Circuit has confirmed that the statute creates liability based solely on a machine's capacity rather than on whether the capacity is utilized.") (citing *Satterfield v. Simon Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009)). *See also Sherman v. Yahoo! Inc.*, 997 F.Supp.2d 1129, 1142 (S.D. Cal. 2014) ("the court reaffirmed its previous holding in *Satterfield* that the TCPA focuses on the equipment's capacity rather than present use.") (citing *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)).

Furthermore, even assuming *arguendo* that the D.C. Circuit rules in a manner which is favorable to Defendant, it would be nonbinding on this Court. As the court in *O'Hanlon* put it, "because a decision from the D.C. Circuit would not be controlling in this case, Defendant would not be prejudiced if the case moves forward in spite of the FCC appeals." 2016 WL 815357, at *5 (denying Defendant's motion to stay pending the conclusion of the *ACA* case). Also, the ACA Appeal is unlikely to be the final chapter in the ongoing saga where TCPA litigants appeal or seek reconsideration of whatever orders are issued (as evidenced by Performant's additional request for a stay based on the Great Lakes petition for reconsideration). Petitions for rehearing or writs of certiorari may be filed. As such, the ACA Appeal—even when coupled with *Marks* decision—will fail to dispose of this case and will simply cause an indefinite delay in this case.

As a final point here, the Great Lakes petition for reconsideration of the FCC's August 2016 Order will not be dispositive either. Defendant argues for a stay pending the outcome of a Petition for Reconsideration of the FCC's August 2016 FCC Order filed by Great Lakes, hoping the FCC will reconsider the exclusion of "subcontractors" like Performant from the exception. (Def. Mot. 7.) This argument actually undercuts Performant's other assertions.

First, the August 2016 FCC Order clarified that the exception for debt collection applies only if, "the telephone call is made by the owner of the debt, or its contractor;" specifically refusing to extend the protection to "subcontractors." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC Report and Order, FCC 16-99 (rel. August 11, 2016).[4] In another TCPA case against Performant (*McPherson v. Performant*) Dave Lubets, a Vice President of Performant Technology, Inc. declared under oath that Performant:

> [I]s an accounts receivables management contractor that provides default prevention services on behalf of the United States Department of Education through a *subcontracting* arrangement with Federal Loan Servicing ("FLS"), a Title IV Additional Services ("TIVAS") Contractor.

Decl. of Dave Lubets, No. 3:16-cv-00520 (N.D. Cal.) June 30, 2016, ECF Dkt 24-1 at ¶ 3.

---

[4] available at https://www.fcc.gov/ecfs/filing/08111407302175/document/08111407302175e1e4.

Therefore, by Defendant's own admission it is a *subcontractor* and does not fit the exception for debt collection calls under the TCPA.

Nonetheless, a request for reconsideration was made, yet another supposed basis for a stay here (and proving that decisions in the ACA Appeal and *Marks* cases won't be dispositive).

And even assuming *arguendo* that the August 2016 FCC Order were modified to include subcontractors, it would not be dispositive of Plaintiff's claims. First, the August 2016 Order exempted calls to "debtors," however, the Plaintiff and the Autodialed No Consent Class consists of cellular telephone number that are not holders of debt to the government. (Compl. ¶ 37.) Second, in the August 2016 Order, the FCC ruled, "[t]he maximum number of telephone calls that may be made to a debtor is (A) three telephone calls within a thirty-day period." August 2016 FCC Order at 31. As explained above, Plaintiff alleges that Defendant called him daily for two to three weeks at a time. Thus, even if the FCC were to change course and include subcontractors in the exception, Defendant grossly exceeded exception's maximum allotted calls.

Simply put, Defendant's attempt to halt this action pending the outcome of the petition for review amounts to nothing more than an aspiration that the FCC will rewrite the rule completely. As shown above, even considering—for arguments sake—Defendant's were to be included in the exception, the Plaintiff's and the Alleged Class's claims would not be mooted.

**B. No one knows when the ACA Appeal will actually be decided.**

Any guesses as to the timeline of when the *ACA* case will be ruled upon are pure speculation. Put simply, no one knows when the D.C. Circuit may issue its decision. This is a complex matter that has been pending for almost a year. Also, and as explained above, regardless of the outcome the ACA Appeal, the decision will likely be appealed to either the full D.C. Circuit and/or the United States Supreme Court. Hence, the reality is that any stay here would be in place for an extended, if not indefinite period of time. *See Pritchard v. Comenity Bank*, 2016 U.S. Dist. LEXIS 89123, *2 (D.N.J. July 5, 2016) (finding that "a stay on the basis of ACA International is not appropriate because the length of the stay is indeterminate"); *see also Schwyhart v. Amsher Collection Servs*., 2016 U.S. Dist. LEXIS 56065, *8 (N.D. Ala. Apr. 22,

2016) (denying motion to stay due to indefinite nature of ACA proceedings, noting "there is always the possibility that the D.C. Circuit's decision will be appealed to the Supreme Court, adding a further layer of indefinite-and perhaps lengthy-delay were a stay to be granted here.")

Additionally, Performant does not merely ask that the Court sit around and wait for the D.C. Circuit to rule. Rather, once that is done, the Court must further wait for the Ninth Circuit in *Marks* to consider whatever the D.C. Circuit ultimately says (or doesn't say). (Def. Mot. 4-5.) That is, in *Marks* the district court, in dicta, broke away from *Satterfield* and a host of other decisions and held that dialing equipment must have present capacity. *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014) (granting summary judgment in defendant's favor where "The platform used . . . does not have the present capacity to store or produce numbers to be called, using a random or sequential number generator, and to dial those numbers.") The Ninth Circuit has suspended consideration of this case pending a decision from the D.C. Circuit.[5] Performant claims the Court needs to wait for the ACA Appeal <u>and</u> a decision in *Marks*--which could plainly add on several additional months to any stay of the case.

As such, because a stay based on the D.C. Circuit and then the Ninth Circuit would pause this litigation indefinitely, this Court should deny Performant's Motion to Stay.

**C. A stay will prejudice Glick's ability to prove his claims.**

Despite Defendant's assertions to the contrary, Plaintiff will be prejudiced by a stay.

The Ninth Circuit has stated, "[w]e agree with the majority position that lengthy and indefinite stays place a plaintiff effectively out of court. Such an indefinite delay amounts to a refusal to proceed to a disposition on the merits . . . Even if litigation may eventually resume, such stays create a danger of denying justice by delay" *Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007). The court in *O'Hanlon*—in denying a motion to stay pending the *ACA* case—explained that "[a] stay pending that

[5] On December 14, 2016, the Ninth Circuit issued an order stating simply "Submission is vacated and deferred pending the D.C. Circuit decision in [*ACA*] (argued on October 19, 2016)." *See* Case No. 14-56834, Dkt. 62.

litigation would suspend for an indefinite period of time Plaintiff's opportunity—and the opportunity of the putative class—to vindicate their rights before this Court." 2016 WL 815357, at *5. If the requested stay is granted, Plaintiff's day in Court will be denied or seriously delayed.

Added to this is the fact that witnesses memories fade over time and that data—particularly the type of electronic information at issue in this case—becomes more difficult to adequately preserve, produce, or replicate in full. *See Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) ("Unnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale.") (citing *Sibron v. New York*, 392 U.S. 40 (1968)).

The potential harm to the Plaintiff substantially outweighs any risk to Defendant with having to proceed with discovery.

**D. Unlike Glick, Performant won't suffer any prejudice.**

Defendant's only assertion that it will suffer prejudice if this case is not stayed, involves its burden in class discovery. In order for a stay the be granted, the proponent must show "a clear case of hardship or inequity in being required to go forward." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936). Being required to defend a suit does not meet this standard. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) ("being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."). *See also Edwards v. Oportun, Inc.*, 2016 WL 4203853, *5 (N.D. Cal. June 14, 2016) ("Uber may suffer hardship, in the form of additional discovery, the Court concludes that this potential hardship does not merit a stay in this case.").

While Defendant will have a burden in responding to discovery requests, that burden is not significant enough to demonstrate "a clear case of hardship or inequity." Instead, its burden is simply the same as associated with defending itself in any litigation. That cannot be said to outweigh the potential harm to Plaintiff Glick and other TCPA consumers.

## IV. CONCLUSION

For the above reasons, Defendant's Motion to Stay should be denied.

Dated: February 10, 2017

**TIMOTHY GLICK**, individually, and on behalf of all others similarly situated,

By: /s/ Steven L. Woodrow
One of Plaintiff's Attorneys

Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan Coleman (Law@stefancoleman.com)*
Law Offices of Stefan Coleman, P.A.
201 S Biscayne Blvd., 28th Floor
Miami, FL 33131
Tel: (877) 333-9427
Fax: (888) 498-8946

*Counsel for Plaintiff and the Putative Class*
**pro hac vice*

**CERTIFICATE OF SERVICE**

I, Steven Woodrow, an attorney, hereby certify that I served the foregoing papers by causing true and accurate copies of such papers to be transmitted to all counsel of record through the Court's electronic filing system on February 10, 2017.

/s/ Steven L. Woodrow